Your Honor, my name is Donald Etra. I'm representing the appellant, Richard Eric King, and I would like to reserve five minutes for rebuttal. To summarize our argument, which is in four parts, the first, we contend that the motion to suppress should definitely have been granted. We also contend that there was insufficient evidence on the silencer issue and on the rifle parts issue. We contend that the district court should have granted our motion for judgment of acquittal on both counts, not just one count, based on the outrageous government conduct. We also raise a question about the short time for jury deliberation. We contend that the search warrant should have been suppressed because the agents showed a reckless disregard for the truth. They stated that they checked with the DMV and that they found that there was a license under the name of Eric Richard King. As the evidence at trial showed, Mr. King's license was under the name of Richard Eric King. We would submit if they had not recklessly disregarded the truth and perhaps even misstated what the DMV check showed, they would have found out that almost the entire collection possessed by Mr. King was properly registered. The record's kind of annoyingly sparse in some ways on the sequence and details of the record search. Is there anything in the record that makes clear that the DMV search was first? I believe that the evidence is that that was part of the basis for the search warrant. I understand that. What I'm asking is this. If they first did a DMV search and say they did it for King and an address. They say they were looking for a date of birth, but that can't be because they didn't know the date of birth, presumably, until they got the DMV records. But if they did the DMV search first, before they did the firearms database, whatever it's called, they would at that point, I guess your point is, have turned up the right name. There's no question about that, I think, in the except of the record. And so then, if they then plug the wrong name into the, with the date of birth into the firearms database, then it seems to me there's something to the statement that why did they take the wrong name when they've already gotten the right name. But do we know that that was the sequence? What they contend is that they put the wrong name into the DMV. I understand. And they got the license back. We contend that that couldn't possibly have been the case because, as we show, the license wasn't under the name of Eric Richard King. All right. So let's assume that they're wrong about that, that they then got the right name. But if they simultaneously had gone off and done a separate search of the database and under the wrong name, but they didn't yet know the right name, why would that meet a Frank standard? Well, because they admit they could have gotten the right name within 15 to 20 minutes just by checking the database. So you don't think that we can surmise, what I'm really asking you is can you surmise from the record that they first did the DMV search, got the right name, and then did the database search with the wrong name when they already had the right name? Or is that not in the record? I believe that they had every – that's not in the record. But our contention is that they had every way of getting the right name. And the right name obviously would have shown that approximately 100 of the guns were properly registered because there's no question, I think, in the testimony, when each of the agents is asked, did you ultimately determine that approximately 100 or almost the entire collection was properly registered, they said yes. And they also explained that Mr. King ultimately showed them his dealer registry of sales for the entire collection. So they would have found out that everything, with the exception of the few items that were charged, was properly registered. Is there anything in the record about how the firearms database operates, why it was that it turned? They claim that it operates on the last name and the date of birth or the last name and the address. If that were true, it should have turned up the right answer, but it turned up the wrong answer. There's no question about that. There's no question about that. And that perhaps should have been examined more carefully. But there's no question if they had done the right name with the right date of birth. But what if they had the wrong – but their argument seems to be that the first two names don't matter. What matters is the last name. But that can't be the case because, again, we know 100 of the guns were properly registered, so they did something wrong. Does the record make clear that the database actually had the right information? In other words, that if you ran the right name, you would have gotten the right result as opposed – I understand that they were, in fact, registered. But this is – I mean, there are many ways in which the record is very vague. And one of them is it isn't really clear where the information that they were registered came from. Did it come from a correct run through the same database? It came from their subsequent questioning of the defendant and the defendant showing the documentation of the registration. But it didn't come through a – so we don't really know on anything in this record that if they had run the right name, they would have gotten the right information through the database they used, which I gather was a legitimate database. That seems to be correct. Yes, Your Honor. So we don't know that if they ran the right name, they would have gotten the right information. That, too, is correct. But I think that goes to the diligence of the ATF, that if the ATF couldn't ascertain the true set of facts, then they really did not have probable cause to go into Mr. King's house. If they were checking sources which they found were inherently unreliable, then they can't use that as a basis. Frankly, I think this was a really badly made record. I mean, you don't have anything in the record about this database, about whether it is unreliable, about what would have happened if they ran the right name, anything like that. Whose burden is that? Whose burden are all these holes? Who loses because we don't know these things? I think the government loses because the government hasn't shown that there was any due diligence or a legitimate and honest search to determine whether or not Mr. King did have properly registered firearms, including this machine gun replica, which again turns out to be properly registered and which doesn't turn up until after the search. They never come up against that as well. So they're using what apparently is an unreliable method to justify their search. So I think the defense wins on that, on the state of facts that Your Honor has. But we don't know whether it's unreliable because they ran the wrong name or for some other reason. Well, we know it. We know ultimately what the ATF did turned out were the wrong results. We submit that part of the reason appears that they used the wrong name and that they didn't, they didn't first attempt to find out the right name of the owner of the residence, which they admit would have taken them a very short period of time. Here's what I don't get. In the affidavit supporting the request for a search warrant, let's see. Who's talking? The affiant is Special Agent Panetta, and he specifies items that Officer Kernan told him.  Okay. But paragraph 6, he says, I cause a check to be made of the California driver, the DMV, for Eric Richard King, and learn the following. Eric Richard King has a valid California driver's license, and here it is. Here's the number. And Eric Richard King has a residential address of, which is the same as Richard Eric King. We know that's false. Right. Well, that's what, I don't understand why they didn't look at the California driver's license and see what address was on the Eric Richard King. I agree. They didn't. There was just a reckless disregard. And they could have gone to the building safety in Santa Paula and found out who was the deed owner of that property. They could have checked passports. They could have checked. But the problem isn't that. Can I just finish my pursuing this? Yeah. Was there, I mean, could they, when they got this computer record, could they have obtained a copy of the driver's license and found out what the address for that person was? My, I don't think there is such a person, Eric Richard King, at that address. That's wrong. I don't think that was the question. Right. It wasn't the question. I'm sorry. My question is, they recite that Eric Richard King has a valid California driver's license. Here's the number. Why don't they have also the address and the date of birth for that person, who has to be a different person than the defendant? Well, the defendant does have that driver's license number. Number. It's his driver's license number. Yes. The 706-1631. And it did have the right address on it. The problem was that it didn't have that name on it. It doesn't have the right name on it. So they looked at something that had name A and they said it had name B, but it didn't have that name. That's correct. We think that that's negligence or reckless disregard. And the reason that ultimately matters, as I understand it, the only reason it could ultimately matter is if that is the name that they plugged into the database, to the Myron's database. And if the database worked properly as it should have, as Your Honor pointed out. I say they clearly, they didn't put in the right name. And very possibly, as Your Honor has pointed out, perhaps the record is unclear or omits the fact that maybe the database doesn't work properly. But under that situation, we'd say that the issue of the suppression should have been ruled on. But if the database doesn't work properly, what you're looking at is whether the officers acted reasonably. All right. So they get a name. They plug it in. And it's got the names reversed. And they get back this man's driver's license number and address. That's the DMV. They first do a DMV check. That's right. And so they get back this man's driver's license number and address. Can't be. They must have been lying about that. Why does it can't be? In other words, why can't the search have been improper on the search engine side? Why does it we have to assume that the agent is lying, which is contrary to how we start these analyses? Because if one does a DMV check and you get a printout, you get a picture of the license and a picture of the person's face, and that would show the actual license, which we have reprinted here and which was in evidence on Excerpt of Record, page  So now I think we're adding an extra element here. Maybe the DMV search database is wrong, but there's no evidence of that. So we're just assuming that the officer is lying. Well, we're or recklessly disregarding what he found or not spending the 15 or 20 minutes to find out who lives in that residence. But none of that matters, does it, unless it cooked up to the mistake with regard to the registration of the guns, right? The fact that they had the wrong name on the driver's license sitting by itself wouldn't make one little difference. Am I right about that? You are right about that, but again So the only reason it matters is if this same name, either they used the same wrong And not only that, they knew it was wrong or they recklessly disregarded it. And that would come out of if you thought that there was a sequence that they did the DMV search first. Because then they must have gotten the right name and they just made and even though they now know the right name, they continue to use the wrong name. That's why I began with the question of can is that a necessary inference from the record, that sequence of events? And you say no, it isn't a necessary inference from the record. So then I have a problem understanding how the DMV mistake hooks up to the registration gun registration mistake. How does it? I think we presumed that if you put the right name into the registry, you would get the right results. Here the right results were that approximately 100 guns in his collection were out of the way. But let me make my problem more specific. We don't really know where they first got the idea that his name was Eric Richard King instead of Richard Eric King. It could have been a totally innocent mistake, not in reckless disregard of anything. There is some evidence about their seeing a receipt that had the name of Eric Richard King. We've never seen that receipt. Right. And he could have just transposed and made a mistake in his head. It could have been an error. I mean, that it seems to me if that's all we had, that he when he looked at the receipt, he transposed the names and so he looked for the wrong name. I mean, that doesn't sound like reckless disregard of anything. But it would be reckless disregard if he had ran the DMV check and gotten the right name and then didn't use it. Well, we contend that we were, I guess, assuming that the DMV check was legitimate. My understanding is he did run the DMV check prior to running the check with the National Firearms Registry. And that's how he got the data on Mr. King to input into the National Firearms Registry. That's been, I think, everyone's understanding of the sequence of what happened here. And we contend. That's exactly where I began. And that's why. Yes. That's what I think the parties have been proceeding on that basis. We also believe that the affidavit is incorrect. There was no expertise by the affiant. He states that he's got no expertise in firearms recognition. The local Santa Paula officer also admitted he had no real expertise in recognizing it. And part of the reason for going in was the citing this machine gun replica, which turns out to be legally registered. And we believe that there was no real expertise for them to opine that it wasn't legally registered. So we have the wrong name, the wrong statement regarding the driver's license, the wrong conclusion regarding the machine gun replica, no expertise of the affiants, and that a simple matter would have been to find out the right name and determine that there was registration. Turning to the issue of sufficiency of evidence, I do point out that the district court judge himself had difficulty with the finding of the jury. He, I think, concluded that quite possibly any and all. Didn't he say that he knew? Wasn't there a question whether Mr. King said at the scene, was asked at the scene whether he knew that there were silencers and said he did? No. When the agent showed him what it was, he acknowledged that, yes, it's a – there was some colloquy about, yes, it's a silencer. Why wasn't that enough evidence? Because there's no evidence that he knew before the search or before it was shown to him. When there's a discussion point. Going back to the silencers, Agent Panetta, did he tell you that he knew there were silencers? Objection leading. Overruled, yes. So what is it? Because that's not prior to the time of the search. That's not prior to the time that he's alleged to have possessed him. It's after all of the guns and the weapons are out there and they're discussing the matters and she's shown the silencer. But there's no evidence that prior to that time that he knew that it was a silencer. She was rather fine cut. It is, but it's like I've never seen a device such as this timer. I could say I don't know what it is. I don't know what it's about. But, again, someone shows it to me now and says, look at this timer, Mr. Etchart. I say, I see the timer. Do you know it's a timer? Thank you for pointing this out to me. At that point, do I know it's a timer? Do I know it's a timer beforehand? No. And I think we indicate numerous reasons why there was no real evidence that a jury could conclude beyond a reasonable doubt that he knew the silencers were silencers. They were wrapped in very heavy wrapping. They did no fingerprint test. There's no evidence he ever used them. There's no evidence he ever heard them. There's no evidence that they fit any of his guns. There's no evidence. He also said he knew they were there. I asked Mr. King about the silencers and he stated that they actually came with the house. So he knew they were there. He didn't know they were there. He knew that the objects were there. The objects were there. Correct. But no evidence that he knew what the objects were. But weren't those objects found in his gun room? It was found in a separate cupboard in the same room with other parts of his collection. So if you've got non-firearm objects, you keep those in the same room you keep your firearms? I mean, doesn't that indicate some knowledge on his part that these are firearms? No, because he's … Well, let me finish, please. I'm sorry, Your Honor. Doesn't that indicate some knowledge on his part that these are firearms connected? Otherwise, they might be in the kitchen or out in the garage. Well, part of his collection were in several rooms of his house. Also, these resembled the very type of metallic tubes used in his business, which is the laser business. I think there's evidence in the record to that effect. But what you're talking about is, is there evidence in support of the verdict which would support what the jury found? Not whether there could have been more evidence or whether there wasn't enough direct evidence, but whether a reasonable fact finder could find that he knew based on everything that was in the record. Based on the fact that these were wrapped in such a casing, based on the fact there was no evidence he touched them or had any contact with them, a jury could conclude maybe he knew what they were. Could a jury conclude beyond a reasonable doubt that he knew what they were? Absolutely not. We would submit that the same, same facts apply to the rifle parts as well. Again, I would like to reserve some time for rebuttal. All right. You have 14 seconds. Thank you. Thank you. May it please the Court. My name is Jaime Guerrero, and I'm counsel for Apelli, the United States in this matter. Before I go into the prepared argument that I made, Your Honor, I'd like to address two different issues that were raised by this Court. The first is the DMV check as well as the NFA check, which is the two issues that relate to the probable cause in the search warrant. As stated in the record and as stated by the agent, he ran the DMV check by using the last name and then the first name that he was given, which was Eric, which he felt was Eric Richard King. In his testimony during the motion to suppress hearing, he specifically said that what came back and what usually comes back is any combination of those names, but he said that what came back was a last name and a date of birth and an address. I did not understand him to say that. He said that he got a – my understanding is that he got all the people for whom that was a match, but not that he didn't get the right first name back. I thought he did get the right first name back. Actually, Your Honor, my understanding, if I could point to the record. Give me one second. What the agent said was that, again, and this is that excerpt of record, page 53, many times the first and middle names are interchanged. It is the last name that I rely on for positive identification as well as the date of birth and then the address. In this case, they had the address, the correct last name, and they had the first and middle names. The first two names were transposed from Richard Eric King to Eric Richard King, and that was based, as the Court did find in this case, somewhat to the defendant's own fault. He admitted that he used Eric King. His friend, which testified in the record, said his name was Eric King. So the basis for the – Why is there any fault associated with that? Why is there – Fault? I don't believe there is any fault, Your Honor. Right. I believe it was a legal mistake made by the agent, and that's what the Court found. No, I'm talking about you're saying, oh, to the extent there was any mistake, it was because of the defendant's own actions, their own fault. That was in your brief, too, and that just sort of struck out at me. I mean, I use different names, too, sometimes, for different purposes. That is correct, Your Honor. But that is the – I mean, why is that bad? Is that something that's bad? It's not bad, Your Honor, but it leads to what the district court found in its tentative ruling and also what he said during the hearing, which was, at some point, the agent was reasonably relying on a name, and that reason, the reason why he relied on part of that was because the defendant himself used different names. So to say that because of that transposition error, there was some alleged fault on the part of the government or that they did it on purpose or recklessness in regard for the truth, it just doesn't exist. Okay. It goes to recklessness. But let – so you concede that the ATF search was faulty. It's just you take the position it wasn't due to recklessness or dishonesty. We don't – well, we concede that the defendant's name is Richard Eric King, not Eric Richard King. All right. And he said that when he ran the DMV, he came back with the right name, I believe, the right date of birth and the right address. So at that point – and the only way he would have had a date of birth, and he says so, he said, how did you find the date of birth? He said from the DMV check. Then he says he ran the name and the date of birth through the ATF. The only way he had the date of birth was from the DMV check. So that must have been the sequence. That is correct, Your Honor. All right. So at that point, it seems to me, if you really read carefully, he had the right name and he didn't use it. Actually, Your Honor, what he did use, he used the last name and the date of birth. And that's all he needs to run the NFA check. So then the only explanation is that the ATF database is all screwed up. That is actually not correct. And I wanted to correct an error made by the defense. The defendant to this day has not a single weapon registered under the NFA. The hundred weapons the defendant is claiming are registered, they're registered with the State of California. Those are legally registered with the State of California. That is a separate issue. So it wouldn't have mattered whether they used a correct name, an incorrect name, and as the agent testified at trial – Are they legally registered? They're legally registered. Okay. Is it true that the – if they had known it was legally registered, this is something it took me a while to understand. But it seems to me that the – although you at one point say that the machine gun – and all this doesn't matter because the machine gun appeared to be – or there appeared to be a machine gun, even though it turned out it actually wasn't a machine gun, but it appeared to be and that was an unprobable cause. But I gather that this machine gun was actually registered also. It was. And it couldn't have been if it were illegal – if it were illegal. So if they had known it was registered, they couldn't have thought it was – it was what they thought it was. Well, Your Honor, I guess that's one of the issues. In this case, they thought when the officer went in there, a police officer went into the house and saw this weapon, from his prior experience as an M2 machine gunner with the U.S. Army, he believes it to be a machine gun. Right. But if it were actually registered with the State of California, it must not have been what he thought it was. That is correct, Your Honor. All right. So he's the local police officer. Shouldn't he have checked with the State database before going and getting the ATF agents involved in making this a federal case? Your Honor, at that point, what he did is he called the ATF and said, I believe this to be – I saw a machine gun when I went into the house. I didn't touch it. I didn't move it. It looked to me to be a machine gun. You mean there could be all sorts of people running around with perfectly registered guns, but you could run it through the ATF database and find that they weren't registered, and therefore allege that it was an illegal gun when it was really an illegal gun. In fact, what you could do is choose to search the federal registry and not the State registry so that you'd have probable cause to go execute a warrant. Not necessarily, Your Honor. The reason we did so was because if it was a machine gun that the government believed at the time, there was a reasonable belief, a reasonable belief as the court found, he could not have registered that legally. He could not own a machine gun. Right. So if you want to find out whether it was in fact registered and therefore not what you thought it was, then you look at the place where he might have registered it, which I gather is the State. I don't understand the difference exactly. And that is part of the issue. When the officer saw it, there's no way because it was an exact replica of a U.S. machine gun that he could have known that it was a replica. And even if he had run a search, it wouldn't have shown up there as what he thought it would have been, which is a machine gun. No, it would have shown. But I gather that if he had run a proper search, he would have found it because it was registered, and therefore he would have known that it wasn't an illegal machine gun. Isn't that right? No, Your Honor, and I guess that's where there's confusion. He would have run it, and as the officer said and as the agent also said who testified, neither one of them had any experience with this replica gun that was an exact replica of a machine gun. So even if they had gotten a list of 100 weapons, there's no way they could have said, oh, this is a registrable M1 machine gun or replica M2 machine gun. They would have said it's still a machine gun. It's not registered on the NTA. So what point did they find out that, you know, of the 100 guns, that only some silencers and some machine parts, I mean, gun parts were not registered? They found it when they conducted the search, Your Honor. At the time of the search? Yes, Your Honor. All right. So they find these guns there, 100 of them are not registered, and they still arrest Mr. King? No, because what they found were weapons that weren't registered, that he had never registered the silencers, he had never registered the short barrel rifles, and he had never mentioned the machine gun parts, which could not be registered with the NFA. Let me go back. The record doesn't make any of this clear. You're telling me that this registry that they looked at was a useless registry because it wouldn't have demonstrated whether these guns were registered or not registered. Nonetheless, they put into the affidavit that they were not registered. No, Your Honor. What we're saying is that he had no – the weapons that we contend were illegal. The weapons that he was convicted on, those were not either on the California registry or the federal registry. But still, the affidavit alleges that there was – they went into a database and found that all these guns were unregistered. They had no registered guns, right? That the gun that they saw was they believed to be a machine gun. Not that gun. Any gun. The affidavit says – let's see if I can find it. It is at page 17 of Eckert's affidavit. He caused a check to be made of the National Firearms Registration and Transfer Record to see if he had any firearms registered. He was informed that there was nothing registered. But it doesn't say – that doesn't mean anything because they could perfectly well be legally registered. That is correct, Your Honor. But at the time, when they went into the house, were they believed to be a machine gun after they did the search? This is what I'm asking you. You are now representing to us that this National Firearms Registration and Transfer Record is essentially checking that database as to whether something is a registered gun is a useless act because it doesn't – at least when it comes back negative because it doesn't prove that they're not properly registered. No. You know what I mean? I guess that's where the confusion is. Because there are two different registries, that's the problem. The first registry is a California registry. Because someone registered in the California registry certain guns, he could not have registered the guns that he didn't have. He never registered, which was the short-barreled rifles, the silencers, and the machine gun conversion kits. A machine gun was in fact registered in California. It was, Your Honor. Right. So the fact that it wasn't registered – wasn't anybody reading this? Because I certainly thought so, that when you say that it's not registered to Eric Richard King in the National Firearms Registration and Transfer Record, that means something. It means that it's illegal for him to have it. That's the implication. But now you're telling me it doesn't mean anything. No, Your Honor. I guess what we're trying to say is that at the time, when the officers walked into the house and saw what he believed to be a machine gun, we did a search to determine if the defendant had registered a machine gun. He hadn't. Now, obviously – But that search was with a database that's not a useful database because it doesn't necessarily show whether it's legally registered. And I guess that's where I'm not – maybe I'm not answering the court's questions. Is that not what you're saying? No, Your Honor. Because what – for us, what mattered is at the time when they made the initial application for a search warrant, they believed it to be a machine gun. Did they later determine that it was a machine gun? That's correct. But I'll analogize. If the police had gone in and seen a pound of what they believed to be cocaine, they go get a search warrant for it, and they then go back and see what – okay, it wasn't a pound of cocaine. It was baking soda. But next to it is a pound of methamphetamine in a different bag. That does not – it's what they reasonably knew at the time of the search, Your Honor. And at that time, they reasonably believed that the machine gun wasn't – What was the reason for doing this search and including the sentence in the – or the two sentences in the – in the affidavit if it didn't have any meaning? What two sentences, Your Honor? The ones about doing the National Firearms Registration and Transfer Record search. It does have a meaning, Your Honor, because what they were searching for was to see if the machine gun they thought was a machine gun was on that transfer – the NTA record. And the fact that it wasn't just meaningless because it could have been on the California record, and, in fact, it was. That is true, Your Honor. It was on the California record. But at the time when they did the search, they didn't know it was – they didn't know it was a replica. Even the court, who – during the motions of the press – So why were they searching for anything, then? Because they believed it to be a machine gun, Your Honor. So why were they searching for it? If they thought it was a machine gun, it wouldn't have been registered. There was no reason to search for it. But there was a reason to search for it because it might not have been a machine gun. There are certain circumstances, Your Honor, when somebody can register a machine gun. And there are – there are – there are, in the section prohibiting machine guns, there are certain people who can register them. So they would have checked. They would have seen that he would have been either a police officer or some other law enforcement type who is allowed to have a machine gun. And he didn't have – it wasn't registered to him. So based on that reason, they believed it to be a machine gun. They believed it wasn't registered. And that's what they expected when they went in there. So a true M2 machine gun is absolutely unlawful to possess unless you come within one of those two exceptions you just made. That is my understanding, yes, Your Honor. So they're just making sure he didn't come within an exception. Exactly, Your Honor. They looked. They wanted to make sure that he hadn't registered it, even though technically speaking he couldn't unless he met one of the two criteria. He didn't meet that criteria. We found that out later. And we found out later that it wasn't a machine gun. Now, the machine gun wasn't what he was charged with possessing. That is not the machine he was charged with possessing, Your Honor. Okay. But it was the basis for the search warrant. That is correct, Your Honor. Is there – suppose they'd done a search of the state registry, would they have come up with the registration for this gun? That – I believe if they had checked on the California registry, they would have come up with a list of 100 weapons that the defendant registered. And I believe that gun was one of the guns that were registered. All right. So they would have come up. So was it reckless not to search both registries? I don't believe so, Your Honor, because at the time when they did the search, they believed it to be a machine gun. The officer who – the officer who saw it, an officer who put the – who was the affidavit for the search warrant, didn't know. There's no – he had never heard of this type of gun, didn't know that this was an exact replica of a machine gun. He believed it to be based on his discussions with an expert and with the officer who saw it, an M2 machine gun. That was the one that the Army used on a regular basis, and that was the reason for the probable cause, as the Court found. The Court found, even if you excise the two statements that the defense claims are reckless, that there was still probable cause based on the machine gun that they thought they saw and what they reasonably knew at the time they applied for the search warrant, Your Honor. As to the sufficiency of the evidence, Your Honor, I believe there is an issue regarding sufficiency that the defendant has raised, but it's not an issue that goes in his favor. As the Court found during the motions for – the hearing on the motions for new trial and acquittal, what the Court specifically said was, in response to Mr. Eckert's claim that there was sufficient evidence, the Court said, so this – so that if – and this is at Excerpt of Record, page 225 – so that if this gets to the circuit, they may – they know what I'm thinking. I don't agree with you on the sufficiency of the evidence. My own view is that the evidence was sufficient to convict on that count. And he also makes a – and that's on count one was ultimately dismissed. But as to count two, he made the exact same statements. He said, and as the district court observed, I think that the jury in all likelihood looked at the defendant and all the items he had in his possession and that he obviously knew about because of the registration said, you know, we simply don't believe him. And that's something that the jury could infer based on what the – what was presented by the government during this case in chief. They presented the defendant had an arsenal of weapons, and we – and we showed over a hundred weapons that were found during this search, a value of a weapons of $90,000 to $100,000. The fact – and specifically, one thing that's clear here, the defense doesn't want to argue the short-term – short-barreled rifles, because clearly in that case, if you look at U.S. v. Kent, there's enough evidence to convict on that count. He had seven upper receivers and seven lower receivers all within his gun safe, all And in Kent, Your Honor, what the – in that case, the defendant actually had one AR-15, which was what the defendant had, and he had a separate upper receiver, which was a short-barreled. The court found that even though it was separate, the fact that he could have taken the other one off and put it on, that's sufficient for a conviction for a short-barreled rifle. Kagan. Is it true that only one of these things has to be true anyway? That is true, Your Honor. That is true. And that's the other issue, Your Honor. In this case, the jury was given a special verdict for him. They were asked, did you find silencers, short-barreled rifle, or both? And they said both. In this case, there was more than sufficient evidence on both the short-barreled rifles and the silencers. But does he need both to be convicted or just one? He just needs one, Your Honor. They could have just found the short-barreled rifles, and that would have been sufficient for a conviction on that count. And a special probative value in this case, Your Honor, is that all the weapons that we've charged that were parts of the counts of conviction, those were not registered, Your Honor, showing a knowledge on the part of the defendant that he knew what had to be registered and he knew what didn't have to be registered and he didn't register what he should have, which were the short-barreled rifles and the silencers, Your Honor. In addition, one thing that was brought out during the colloquy between the defense counsel and the agent during the trial itself, the defense tried to establish that they never intended on creating short-barreled rifles, that in fact they were going to be creating pistols. They would put pistol lowers on the upper receivers, and that itself is a pistol. As the agent, two different agents testified to this, that those weapons, if they put a pistol lower to the short-barreled upper receiver, would have been an illegal armament as well. So under any circumstance, there's nothing the defendant can argue against regarding the short-barreled rifle. There was more than sufficient evidence from which the jury could infer that he intended to create short-barreled rifles and he had the means and the knowledge to do so. And, Your Honor, going to the last issue, which is the issue that the court, that the defendant raised regarding the choice of the court to dismiss on count one and not to dismiss on count two, we believe that that was properly handled. While the government acknowledges its error and believes that the sanction was extreme, we accept that sanction, we accept it for what happened, but we believe that anything further at this point, Your Honor, would both be excessive and a windfall to the defendant. More importantly, Your Honor, in this case, the defendant has not met its burden of showing first that the district court abused discretion on not to dismiss on count two, but more importantly, at that error, the court's abuse of discretion resulted in prejudice to substantial rights. In this case, the defendant has shown absolutely nothing that he would have done differently in this case. He did not ask for time to, excuse me, to cross-examine a witness. He did not ask for a continuance, anything of that sort. He did not, at any time that he had his expert test the weapons. He chose not to do so. Those tests only related to the machine-gun parts? That is correct, Your Honor. And so the question was, would those parts allow someone to convert a semi-automatic weapon into a fully automatic weapon? That's correct, Your Honor. And so that was the count that was dismissed. That was, that's correct, Your Honor. And the government's view is that any relevance. Let me go back to the affidavit and the original question. I've been staring at the affidavit. It says that Officer Kernan told me that he was able to identify the firearm as an M2 .50 caliber machine gun as a result of his training and experience as an operator on the M2 machine gun while in the United States Army. The testimony, Kernan's testimony was much vaguer than that. He says that he did not make a, I discussed with him that the armament existed. It could be fully automatic. I did not make a conclusion whether it was or was not. And then he goes on later and they say, ask him, do you have any expertise whatsoever as to whether certain armaments are legal or not legal? Very little. So where is his expertise? His expertise, Your Honor, was.  That's all it says. It doesn't say anything about being an expert on the M2. It doesn't say that he said, he said he didn't know whether it was automatic or semi-automatic. That is correct, Your Honor. But it's what he saw at the time when he walked in. Based on his experience. No, no, no. But that's, he's testifying as to what he thought at the time. In other words, what I'm saying is that what's in the affidavit that he told me he was able to identify the firearm as an M2 .50 caliber machine gun as a result of his training and experience as an operator on the M2 machine gun while he was in the United States Army is not in the evidence in his testimony. He doesn't say that he had that expertise. He doesn't say that he even said it was an M2. He said it resembled one, and he said, I didn't know. Your Honor, I believe what the defense counsel is asking in this part of the record was whether he knew that that was a replica of an M2. And he's saying, I didn't know that because I'm not an expert in weapons. And that's, he's familiar with the armaments that he used, which was an actual M2 machine  gun. And with defense counsel, if you look at the previous page of Expert 36, he's asking if he knew that it was a Technic, Technic work M2HB model. And he's saying, well, I don't, I don't have that. I can't say I had expertise to know that that's what it was. But when I saw it, and which is what's in the affidavit, I believe it to be an M2 machine gun based on my experience in the U.S. military. Kagan. And then he said, I discussed with him that the armament existed and could be fully automatic. I did not make a conclusion whether it was or was not. And I believe that's what the affidavit as well says, Your Honor. The affidavit says that he believed it to be a machine gun. He was able to identify the firearm as an M2 50-caliber machine gun as a result of his training and experience as an operator on the M2 machine gun while in the United States Army. That's a lot more definite than what he testified to. Well, I think that's, and I believe the difference, Your Honor, would be based on what's in the affidavit for what he told the agent at the time of the search versus what the officer told the agent at the time of the search. And I believe that's the difference. Thank you. Thank you, counsel. You've been over your time. Thank you. Thank you. To briefly address the rifle issue, the testimony was that the lowers of the rifles were properly registered. The uppers did not need to be registered. And there was no testimony whatsoever or evidence that they were put together or that there was any way that he knew that they could be put together. In terms of the search, I think the colloquy that Your Honors have had with government counsel indicates that they used the wrong name. Either the correct database didn't work or they didn't use the correct database regarding Officer Kernan. He was also asked whether the machine gun replica would, was legal. And he said it wouldn't surprise him that it was. And simply, also the affiant also admitted on page 42 of the excerpt of the record that he wasn't a designated firearms expert insofar as the issue of the district court judge's opinion. He made that statement in the motions for post-trial motions. But in the sentencing argument on page 242 of the record, he indicates that it's his belief that he didn't agree with the jury or he could take his own independent view and that he felt that anything that happened in this case was inadvertent, not criminal. All right. Thank you, counsel. Thank you. The case of U.S.B. King is submitted. We will take up NASA v. Hartford Life and Accident Insurance. Thank you.
judges: T.G. Nelson, Wardlaw, Berzon